IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| GARY HUNSUCKER, )<br>)<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>JO ANNE B. BARNHART )<br>COMMISSIONER OF SOCIAL )<br>SECURITY, )<br>)<br>Defendant. )<br>_____ ) | CIVIL ACTION NO. 0:04-22675-RBH-BM<br><br>**REPORT AND RECOMMENDATION** |

The Plaintiff filed the complaint in this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner wherein he was denied disability benefits. This case was referred to the undersigned for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), (D.S.C.).

The record shows that Plaintiff filed for Supplemental Security Income (SSI) on May 9, 2001, alleging disability as of March 1, 1992 due to status post back surgery, numbness in his left leg, and mental problems. (R.p. 148). Plaintiff's claim was denied initially and upon reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge (ALJ), which was held on February 12, 2004. (R.pp. 27-105). The ALJ thereafter denied Plaintiff's claim in a decision issued May 26, 2004. (R.pp. 11-22). The Appeals Council declined review of the ALJ's decision, thereby making the determination of the ALJ the final decision of the Commissioner.



(R.pp. 5-8).

The Plaintiff then filed this action in United States District Court. Plaintiff asserts that there is not substantial evidence to support the ALJ's decision, and that the decision should be reversed and remanded for an award of benefits. The Commissioner contends that the decision to deny benefits is supported by substantial evidence, and that the Plaintiff was properly found not to be disabled.

### Scope of review

Under 42 U.S.C. § 405(g), the Court's scope of review is limited to (1) whether the Commissioner's decision is supported by substantial evidence, and (2) whether the ultimate conclusions reached by the Commissioner are legally correct under controlling law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Richardson v. Califano, 574 F.2d 802, 803 (4th Cir. 1978); Myers v. Califano, 611 F.2d 980, 982-983 (4th Cir. 1980). If the record contains substantial evidence to support the Commissioner's decision, it is the court's duty to affirm the decision. Substantial evidence has been defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. **If there is evidence to justify refusal to direct a verdict were the case before a jury, then there is "substantial evidence."** [emphasis added].

Hays, 907 F.2d at 1456 (citing Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966)). The Court lacks the authority to substitute its own judgment for that of the Commissioner. Laws, 368 F.2d at 642. "[T]he language of [405(g)] precludes a de novo judicial proceeding and requires that the court uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by substantial evidence." Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).



**Discussion**

A review of the record shows that Plaintiff, who was thirty-two (32) years old when he alleges he became disabled, and forty-two (42) years old on the date of the ALJ's decision, has an eighth grade education with past relevant work experience as an iron worker, doffer, and assembler. (R.pp. 15, 20, 35, 38-39, 149). In order to be considered "disabled" within the meaning of the Social Security Act, Plaintiff must show that he has an impairment or combination of impairments which prevent him from engaging in all substantial gainful activity for which he is qualified by his age, education, experience and functional capacity, and which has lasted or could reasonably be expected to last for at least twelve (12) consecutive months. After review of the evidence and testimony in the case, the ALJ determined that, although Plaintiff cannot perform his past relevant work, there were a significant number of jobs in the national economy which Plaintiff could perform with his limitations, and he was therefore not entitled to SSI. (R.pp. 21-22). Plaintiff asserts that in reaching this decision, the ALJ erred by finding that Plaintiff had amended his alleged disability onset date to May 2002, by improperly evaluating the opinion of Plaintiff's treating physician, by improperly evaluating the medical evidence as well as Plaintiff's subjective credibility, and by finding that Plaintiff can perform sustained gainful work activity when such a finding is contrary to the substantial weight of the evidence. However, after careful review and consideration of the arguments and evidence presented, the undersigned finds that there is substantial evidence in the record to support the conclusion of the ALJ that Plaintiff was not disabled as that term is defined in the Social Security Act during the relevant time period, and that the decision of the Commissioner should therefore be affirmed.

First, it must be noted that this is not Plaintiff's first application for SSI. Plaintiff has



filed three (3) previous applications, the most recent of which (prior to the application at issue in this case) resulted in an unfavorable decision dated March 22, 2000. (R.pp. 108-117). Plaintiff did not seek review of this decision; therefore, the finding that Plaintiff was not disabled as of at least March 22, 2000 is res judicata and binding on this Court. Fair v. Bowen, 885 F.2d 597, 600 (9th Cir. 1989); Brown v. Sullivan, 921 F.2d 1233, 1237 (11th Cir. 1991) [Doctrine of administrative res judicata barred award of social security disability benefits for period before date on which denial by Secretary of Health and Human Services of claimant's first application became final]; Shrader v. Harris, 631 F.2d 297, 300-301 (4th Cir. 1980) [noting incorporation of doctrine of res judicata in the Social Security Administration regulations]. Therefore, in order for Plaintiff to prevail in this case, the evidence must show that his condition deteriorated after March 22, 2000 to the point where he became disabled. Fair, 885 F.2d at 606 [claimant has burden of proving that his condition has worsened since the denial of his previous application].

The ALJ considered the medical and other evidence dating back to March 2000 and found that Plaintiff was not under a disability through the date of her decision. (R.pp. 16-21).[1] This

---

[1] One argument Plaintiff advances is that the ALJ committed reversible error by finding that he amended his disability onset date at the hearing to May 2002. See (R.p. 14). Although there is some confusion on this point in the record, the Commissioner concedes for purposes of this decision that the issue before the Court is whether Plaintiff has established disability since March 22, 2000. However, the Commissioner argues that the ALJ's statement in her decision that the Plaintiff had amended his alleged disability onset date does not constitute reversible error, as a review of the decision clearly shows that the ALJ considered all of Plaintiff's medical records and that her finding reflects that Plaintiff has not established any disability since May 22, 2000. The undersigned agrees. The ALJ clearly considered and evaluated all of the medical evidence from March 2000 forward in reaching her decision; see (R.pp. 16-21); and the ALJ's misstatement of Plaintiff's amended onset date was therefore at most harmless error. Plaintiff is not entitled to reversal and remand of the decision based on this misstatement. See Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994) [affirming denial of benefits where ALJ would have reached the same result notwithstanding error in opinion]; Bailey v. Secretary of HEW, 472 F.Supp. 339, 401 (E.D.Pa. 1979) [remand not required even where ALJ committed error where remand "would afford the plaintiff no realistic possibility



4

finding is supported by substantial evidence. The medical record reflects that Plaintiff's treating physician, Dr. Bill Edwards, opined on March 20, 2000 that, while Plaintiff was permanently restricted from any work involving bending, lifting, twisting, turning, stooping, crawling, and climbing, Plaintiff could work a sedentary job that allowed him to change positions as his symptoms demanded as long as he was "educationally...qualified for such employment". (R.p. 188).  Dr. Edwards had been Plaintiff's treating physician since 1993. (R.p. 187). See Craig v. Chater, 76 F.3d 585, 591-596 (4th Cir. 1996) [noting importance of treating physician's opinion].  In July 2000, Plaintiff began seeing Dr. Krista Kozacki. (R.pp. 240-242).  A question subsequently arose as to whether Plaintiff was receiving too much or abusing his medication, and Dr. Kozacki had Plaintiff sign a contract on January 3, 2001 stating that if he abused or sold his medication, she would not prescribe him any more. (R.p. 239).

        Plaintiff thereafter underwent a voluntary twenty-eight (28) day hospital stay in March 2001 for treatment of cocaine and opiate dependence and depression, and was assigned a GAF score of sixty-five (65) upon his discharge.[2] (R.pp. 189-196).  Following his release from the hospital, Plaintiff went to see Dr. Kozacki on May 7, 2001, at which time she wrote a "To Whom It May Concern" letter stating that Plaintiff had degenerative back disease and disc problems and that Plaintiff was "unable to [be] employed at the present time."  Dr. Kozacki noted that Plaintiff was in the process of seeking Social Security disability. (R.p. 237).

---

of altering the decision'].

[2]"Clinicians use a GAF [Global Assessment of Functioning] to rate the psychological, social, and occupational functioning of a patient." Morgan v. Commissioner of Soc. Sec. Admin., 169 F.3d 595, 597 (9th Cir. 1999). A GAF score of 65 indicates that only some mild symptoms of depression or difficulty in social or occupational settings are present. Simons v. Barnhart, No. 04-5021, 2004 WL 2633448, at **2 (4th Cir. Nov. 18, 2004).



In the summer of 2001, Plaintiff had two hospital visits complaining of chest pain; however, an emergent cardiac catheterization revealed no underlying atherosclerotic coronary artery disease, and an echocardiogram revealed normal coronary arteries. Plaintiff had an ejection fraction of 48% with mild ischemic cardiomyopathy, and he was instructed to stop smoking.[3] (R.pp. 216-218, 226-227, 315-317, 320-321, 327-329, 335-336).

In August 2001, Plaintiff had two consultative examinations performed in conjunction with his application for Social Security benefits. On August 16, 2001, psychiatrist Dr. Al Harley found following an examination that Plaintiff had a normal range of intelligence, fair remote and recent memory, and fair general knowledge with a depressed mood. Dr. Harley assigned Plaintiff a GAF score of 53 [4], and concluded that Plaintiff was mildly impaired in his ability to relate to others, mildly restricted in his daily activities, and mildly constricted in his thought processes. (R.pp. 224-225). Dr. Elizabeth Dickenson performed a physical examination on August 23, 2001, and found that Plaintiff had a regular heart rate rhythm with no murmur or peripheral edema, that Plaintiff had full range of motion of his cervical spine and both shoulders, full grip strength, full strength in his shoulder girdles, full strength in both lower extremities, and full range of motion in both hips and knees. She also found that Plaintiff had an essentially neurological examination with no palpable muscle spasm in his lumbar spine, with 30° flexion and 20° extension of the spine with 30° side-to-side motion and negative straight leg raising test on the right, positive on the left at 30°. Dr. Dickenson concluded that Plaintiff was a "very physically able gentleman who has degenerative

---

[3] Plaintiff was a heavy smoker. (R.pp. 216, 235).

[4] A GAF of 51 to 60 indicates moderate symptoms are present. Perry v. Apfel, No. 99-4091, 2000 WL 1475852 at *4 (D.Kan. July 18, 2000); Matchie v. Apfel, 92 F.Supp.2d 1208, 1211 (D.Kan. 2000).



disc disease that needs more surgical attention." She diagnosed Plaintiff with lumbar disc disease, but noted that Plaintiff's lifestyle contributed significantly to his poor health, specifically noting his continued use of high dose narcotics for back pain, as well as cocaine and tobacco abuse. (R.pp. 229-231). see Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) [ALJ may properly give significant weight to an assessment of an examining physician]; Richardson v. Perales, 402 U.S. 389, 408 (1971) [assessment of examining, non-treating physicians may constitute substantial evidence in support of a finding of non-disability]. In September 2001, a state agency physician and state agency psychologist evaluated Plaintiff's physical and mental RFC based on a review of Plaintiff's medical records, and determined that Plaintiff maintained the ability to perform a limited range of simple, light work. (R.pp. 260-283); Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986) [opinion of a non-examining physician can constitute substantial evidence to support the decision of the Commissioner].

In December 2001, Plaintiff started seeing Dr. Charlotte Francis. (R.pp. 233, 347-350). On August 2, 2002, Dr. Francis completed a form on which she indicated that Plaintiff was unable to work. (R.p. 298). On January 6, 2003, Dr. Francis completed a physical capacities evaluation form on which she indicated that Plaintiff could sit for thirty minutes continuously for a total of four hours in an eight hour work day, and could stand and walk continuously for thirty minutes for a total of two hours in an eight hour work day. Dr. Francis opined that Plaintiff would have to change positions frequently, elevate his legs, and lie down periodically, and further opined that Plaintiff could carry five pounds frequently and ten pounds occasionally. Dr. Francis stated that her findings were based on the "frequency of [Plaintiff's] pain medication use as well as [Plaintiff's] use of [a] cane for ambulation and records of his orthopaedic surgeon." (R.p. 300).



In her decision, the ALJ carefully chronicled this medical evidence and found that Plaintiff's chronic lower back and left pain and depression were severe impairments as defined in the regulations. (R.pp. 16-18). With respect to Plaintiff's mental condition, the ALJ found that Plaintiff had mild limitations in his activities of daily living and social functioning, with moderate limitations in his concentration, persistence or pace. She also found that Plaintiff had "one or two instances of deterioration or decompensation in work or work-like settings." (R.p. 18). With respect to Plaintiff's physical condition, the ALJ noted that Dr. Francis' opinion of January 2003 was conclusory and based on Plaintiff's own activities or conduct as opposed to objective findings, further noting that Plaintiff's back surgeon (Dr. Edwards) had specifically opined that Plaintiff was not disabled. (R.p. 18). The ALJ also reviewed Plaintiff's subjective testimony; (R.pp. 32-90); but found that his testimony concerning the extent of his physical limitations was inconsistent with the weight of the medical evidence and therefore not wholly credible, specifically noting that notwithstanding Plaintiff's testimony that he did not abuse drugs or medications, the medical record indicated continued use of cocaine by the Plaintiff and that he chronically abused his narcotic pain medications. (R.p. 19).

Considering this evidence, as well as the opinions of the state agency examiners and consultants, the ALJ concluded that Plaintiff retained the residual functional capacity to lift and or carry up to five pounds on a frequent basis and up to ten pounds on an occasional basis; to stand and/or walk for a total of up to two hours per eight hour work day and to sit with normal breaks for a total of up to six hours per eight hour work day, as long as he had the option to alternate at will between sitting and standing, avoidance to exposure of unprotected hazards, with a further restriction to simple unskilled work. (R.p. 19). The undersigned does not find any reversible error in these



findings, or in the ALJ's treatment or consideration of the medical evidence or the discounting of Plaintiff's subjective testimony based on the record presented.  See Mickles, 29 F.3d at 925-926 [In assessing the credibility of the severity of reported subjective complaints, consideration must be given to the entire record, including the objective and subjective evidence]; Hunter, 993 F.2d at 35 [ALJ may properly consider inconsistencies between a plaintiff's testimony and the other evidence of record in evaluating the credibility of the plaintiff's subjective complaints]; Jolley v. Weinberger, 537 F.2d 1179, 1181 (4th Cir. 1976) [finding that objective medical evidence, as opposed to the claimant's subjective complaints, supported an inference that he was not disabled]; Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) ["[A] psychological disorder is not necessarily disabling. There must be a showing of related functional loss"].

While Plaintiff properly notes the existence of some evidence and opinions in the record which support his claim for disability, the ALJ was not required to accept this evidence, and could properly rely on the evidence to the contrary.  Hays, 907 F.2d at 1456 [it is the responsibility of the ALJ to weigh the evidence and resolve conflicts in that evidence.]; Cruse v. Bowen, 867 F.2d 1183, 1186 (8th Cir. 1989) ["The mere fact that working may cause pain or discomfort does not mandate a finding of disability"].  Here, the medical records and opinions of Dr. Edwards, from Plaintiff's hospital stays and treatment, as well as the examinations of Drs. Harley, Dickenson and record evaluations of the state agency physicians provide substantial evidence to support the findings and conclusions of the ALJ.  See generally Craig, 76 F.3d at 591-596 [noting importance of treating physician's opinion]; see Hunter, 993 F.2d at 35 [ALJ may properly give significant weight to an assessment of an examining physician]; Richardson, 402 U.S. at 408 [assessment of examining, non-treating physicians may constitute substantial evidence in support of a finding of non-

9



disability]; Smith, 795 F.2d at 345 [opinion of a non-examining physician can constitute substantial evidence to support the decision of the Commissioner]; see also Lee v. Sullivan, 945 F.2d 687, 693-694 (4th Cir. 1991) [denial of benefits affirmed where physicians who examined claimant and heard all of his complaints failed to give an opinion that he was totally and permanently disabled]; Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) [The mere presence of impairments does not automatically entitle a claimant to disability benefits, there must be a showing of related functional loss].

The undersigned also does not find that the ALJ improperly evaluated the evidence of Plaintiff's treating physicians, as she specifically explained her rationale for accepting the opinion and medical records of Dr. Edwards while giving less weight to the opinion of Dr. Francis. (R.p. 18). See 20 C.F.R. § 404.1527(d)(5) (2001) [opinion of a specialist about medical issues related to his or her area of specialty are entitled to more weight than the opinion of a physician who is not a specialist]; Craig, 76 F.3d at 591-596 [a treating physician's opinion is entitled to controlling weight only if it is well supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record]; 20 C.F.R. § 404.1527(e) ["a statement that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled"]; Castellano v. Secretary of Health & Human Servs., 26 F.3d 1027, 1029 (10th Cir. 1994) [physician opinion that a claimant is totally disabled "is not dispositive because final responsibility for determining the ultimate issue of disability is reserved to the [Commissioner]"].

Finally, at the administrative hearing the ALJ obtained vocational expert testimony wherein the VE was asked whether an individual of Plaintiff's age, educational background, and job history could perform work at the level found by the ALJ. (R.pp. 93-94). In response to this



hypothetical, the VE identified several jobs which Plaintiff could perform with these limitations. Id. While Plaintiff may disagree with the findings of the ALJ, the undersigned has previously concluded that these findings are supported by substantial evidence in the record as that term is defined in the applicable caselaw. Hence, the hypothetical given by the ALJ to the VE was proper, and the undersigned finds no grounds in the ALJ's treatment of the vocational expert's testimony for reversal of the final decision of the Commissioner. Lee v. Sullivan, 945 F.2d at 694; see also Martinez v. Heckler, 807 F.2d 771, 773 (9th Cir. 1986).

## Conclusion

Substantial evidence is defined as " … evidence which a reasoning mind would accept as sufficient to support a particular conclusion." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). As previously noted, if the record contains substantial evidence to support the decision (i.e., if there is sufficient evidence to justify a refusal to direct a verdict were the case before a jury), this Court is required to uphold the decision, even should the Court disagree with the decision. Blalock, 483 F.2d at 775.

Under this standard, the record contains substantial evidence to support the conclusion of the Commissioner that the Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time period. Therefore, it is recommended that the decision of the Commissioner be **affirmed**.

Bristow Marchant
United States Magistrate Judge

Columbia, South Carolina

October   25,  2005